NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230475-U

NO. 4-23-0475

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 16, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| PEGGY J. FINLEY, | ) | No. 23CF21 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robin L. Schmidt, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Harris and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court abused its discretion in denying defendant's motion to reduce bond.

¶ 2   Defendant, Peggy J. Finley, appeals from the circuit court's denial of her motion to reduce bond. Defendant argues the circuit court abused its discretion in denying her motion to reduce bond from $1 million to $600,000. We agree and reverse.

¶ 3                                    I. BACKGROUND

¶ 4   Defendant, a 45-year-old paramedic, was on duty and working with Peter Cadigan, when they responded to a call for the transportation of Earl Moore, Jr., to the hospital for medical treatment. Shortly after his arrival at the hospital, Moore died. Asserting Moore died of positional asphyxiation and compressional asphyxiation after being strapped face down on a

gurney, the State charged defendant and Cadigan with first-degree murder. According to the motion filed in this case, defendant was charged as follows, in part:

> "[S]aid Defendant, or one for whose conduct she is legally responsible, performed acts which caused the death of Earl Moore, Jr., without legal justification, in that said Defendant and Peter Cadigan, tightened restraints across Earl Moore, Jr.'s back and lower body in the prone position and transported Earl Moore, Jr. to St. John's Hospital . . . thereby causing death by compressional and positional asphyxia, said defendant knowing based upon [her] training, experience, and the surrounding circumstances that such acts would create a strong probability of great bodily harm or death . . .."

Bond for defendant and Cadigan was set for $1 million with "10% to apply." Conditions of bail include monitoring by probation or pretrial-services officer and the court, periodic drug testing as recommended, surrendering of a passport, remaining in Illinois, and not working "in any field of healthcare or emergency medicine during the pendency of the case."

¶ 5 The transcript from the preliminary hearing provides some evidence regarding the events that led to Moore's death. The transcript reveals the existence of video, but the record does not contain the video. However, testimony establishes, after Cadigan and defendant arrived, police officers initially positioned Moore on the gurney. Cadigan repositioned Moore. It is unclear whether the officers or Cadigan placed him in the prone position on the gurney, but the testimony shows defendant did not participate in the placement of Moore. After Moore was on

- 2 -

the gurney, defendant draped a blanket or sheet onto him. She also buckled one of the three seat belts over Moore. Cadigan tightened the belts. Neither the gurney nor the blanket impeded the "nasal passages."

¶ 6    The preliminary-hearing transcript further illustrates the State's case against defendant. The State argued there was probable cause to charge defendant with first-degree murder under a theory of accountability. The State maintained Cadigan and defendant acted together as paramedics and both transported Moore to the hospital while Moore laid in the prone position.

¶ 7    On February 6, 2023, defendant filed a motion to reduce the amount of bail, arguing $1 million was oppressive and unnecessary to secure her participation at trial. Defendant left unchallenged the other conditions of her bond. Defendant emphasized she had been a resident of central Illinois since birth. Her four adult children and six grandchildren resided in central Illinois. She lived in Sangamon County and was "in a relationship with a local resident." Defendant had been employed as an "EMT Basic and Paramedic ALS" for approximately seven years. Before the position she held at the time of her arrest, defendant was deployed by the Federal Emergency Management Agency, due to COVID-19 staffing issues, to Kentucky, Oregon, and St. Croix. Defendant's finances were limited as a result of income lost due to her incarceration. Her family saved and raised approximately $10,000 to secure bail. Defendant further emphasized she actively and voluntarily cooperated with the administrative review by Memorial EMS in early January 2023. Defendant voluntarily accepted a 90-day suspension of credentials in regard to participating in the Memorial EMS System. She also voluntarily cooperated with Illinois State Police investigators.

¶ 8    The circuit court denied defendant's motion to reduce bond. The court expressly considered the statutory factors of section 110-5 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-5(a) (West 2020)), addressing the factors as applied to Cadigan and defendant collectively. For example, the court, when considering "the nature and circumstances of the offense charged, whether the evidence shows that as part of the offense there was a use of violence or threatened use of violence" (*id.*), did not differentiate the actions of Cadigan and defendant and found violence occurred. The court's analysis also reveals "Moore presented to officers and [Cadigan and defendant] in somewhat of an altered state and seemingly unable to assist himself and [] force was used upon him when he was in this state." Further addressing the factors, the court when considering the likelihood of conviction cited the prior finding probable cause was found and concluded "based upon the limited information that we have at this point in the proceedings and after a finding of probable cause, I cannot make a determination that a Jury could not find [Cadigan and defendant] guilty." The court heard no reliable evidence either Cadigan or defendant "has the ability or has a plan in motion *** to flee at this time." The court emphasized, however, the nature and seriousness of the first-degree murder charge and the potential lengthy sentence. The court found there was reliable evidence both Cadigan and defendant were indigent and neither had a criminal history. The court further found bond was appropriately set for both to protect the community and to ensure both appeared at trial and denied the motions to reduce bond.

¶ 9    In March 2023, defendant filed an amended motion to reconsider or reduce the amount of bail. In the motion, defendant amended her request to reduce bail to $600,000. Defendant highlighted her family, friends, and acquaintances saved and raised approximately

$60,000 to post bail. Defendant argued, in part, the $600,000 bond countered any "inherent risk of flight due to the nature of the charges."

¶ 10        In April 2023, the circuit court denied the amended motion.

¶ 11        In May 2023, defendant filed a motion for leave to verify the previously filed motions to reconsider or reduce amount of bail under Illinois Supreme Court Rule 604(c) (eff. Jul. 1, 2017), which the circuit court granted. Defendant acknowledged her motion to reduce bail was not verified at the time of filing and asked to verify the motion retroactively to comply with Rule 604(c). No further relief was sought.

¶ 12        On June 1, 2023, pursuant to Rule 604(c)(2) (Ill. S. Ct. R. 604(c)(2) (eff. July 1, 2017)), defendant filed in this court a verified motion for review of the order denying her motion for reduction of bail and the denial of her motion to reconsider.

¶ 13                    II. ANALYSIS

¶ 14        On appeal, defendant largely repeats the same facts in the motions filed below. She further argues the case "is factually like no other" and "is a case of first impression of Illinois" in that the State is seeking a first-degree murder conviction when defendant committed no affirmative acts to cause Moore's death and the State is seeking a conviction on accountability despite no facts or law supporting a theory of accountability.

¶ 15        The State filed its objection, maintaining the circuit court did not abuse its discretion in refusing to lower bond.

¶ 16        The parties agree the proper standard of review of circuit-court decisions relating to setting bond is the abuse-of-discretion standard. The First District, in 2019, stated it had at that time found no Illinois case that discussed the proper standard of review in an appeal under Rule

604(c). *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, 143 N.E.3d 833. The *Simmons* court then concluded the abuse-of-discretion standard applied. *Id.* The Third District applied the same standard in *People v. Johnson*, 2019 IL App (3d) 190582, ¶ 8, 147 N.E.3d 756, as did this court in the unpublished decision of *People v. McBroom*, 2023 IL App (4th) 221110-U, ¶ 14. We find that standard of review appropriate here. Under this standard, we will reverse a circuit-court decision as an abuse of discretion if we find the decision is fanciful, arbitrary, or unreasonable. See *People v. Becker*, 239 Ill. 2d 215, 234, 940 N.E.2d 1131, 1142 (2010).

¶ 17    In Illinois, there is a strong preference bail be available to criminal defendants. *Simmons*, 2019 IL App (1st) 191253, ¶ 13. We note the Illinois Supreme Court has stayed the application of the statutory revisions regarding monetary bail that were to go into effect on January 1, 2023. We, therefore, apply the version of the statutory provisions as it existed before the revision. Section 110-5(a-5) of the Code (725 ILCS 5/110-5(a-5) (West 2020)) illustrates the Code's preference:

> "There shall be a presumption that any conditions of release imposed shall be non-monetary in nature and the court shall impose the least restrictive conditions or combination of conditions necessary to reasonably assure the appearance of the defendant for further court proceedings and protect the integrity of the judicial proceedings from a specific threat to a witness or participant."

¶ 18    To that end, a circuit court is to consider the following, among other factors when applicable, when determining the amount of bail or conditions of release:

> "the nature and circumstances of the offense charged; whether the

- 6 -

offense involved the use of violence or threatened use of violence; the likelihood of the filing of a greater charge; the likelihood of conviction; the sentence applicable upon conviction; the weight of the evidence against such defendant; whether there exists motivation or ability to flee; [and] past conduct ***." *Johnson*, 2019 IL App (3d) 190582, ¶ 10 (citing 725 ILCS 5/110-5(a) (West 2018)).

Other factors include "family ties in the local jurisdiction, in another county, state or foreign country, the defendant's employment, financial resources, character and mental condition, [and] past conduct." 725 ILCS 5/110-5(a) (West 2020).

¶ 19 Here, defendant's ties to central Illinois are strong, indicating a low risk of flight. Except for a relatively brief time when her work addressed COVID-19-related staffing issues in Kentucky, Oregon, and St. Croix, defendant has resided in central Illinois her entire life. Her adult children reside there, as do her grandchildren. She is in what appears to be a romantic relationship with someone in central Illinois. Defendant also maintained gainful employment in the area.

¶ 20 Defendant's financial condition further makes it unlikely she will flee. The circuit court found her to be indigent. Defendant is relying on the financial support of family, friends, and acquaintances to receive bail money. Nothing on the record from her background indicates defendant has the ability or desire to flee and deprive those individuals of reimbursement of those funds.

¶ 21 The charge of first-degree murder is serious, as is the penalty such a charge may

bring. However, the facts of the offense show defendant is not a danger to the public should she be released. While there were acts of violence on Moore, none were physically committed by defendant. Defendant did not assist in placing Moore on the gurney or tighten the straps around him, the two events the State alleges caused Moore's death. The alleged accountability that harmed Moore was the result of defendant's work as a paramedic. There is no other allegation of defendant's violence or threat of violence in defendant's history. As defendant is not permitted to work as a paramedic as a condition of her bond, the public will not be subjected to the same alleged crime by defendant should she be released on bail.

¶ 22      Given these circumstances, the $600,000 bond defendant seeks is sufficient to reasonably assure defendant's appearance in "further court proceedings and protect the integrity of the judicial proceedings from a specific threat to a witness or a participant." *Id.* § 110-5(a-5). The order denying the reduction of bail to that amount is unreasonable and, therefore, an abuse of discretion.

¶ 23                              III. CONCLUSION

¶ 24      Accordingly, we reverse the circuit court's judgment, reduce defendant's bond to $600,000 (10% to apply), and remand for further proceedings.

¶ 25                      Reversed and remanded.